**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SHAMEL JONES**<br>**Plaintiff,**<br>**v.**<br>**EMPLOYEES OF THE DOC OF PA AT SCI-PHOENIX, et al.**<br>**Defendants.** | **CIVIL ACTION NO. 22-2386** |

**MEMORANDUM OPINION**

**Rufe, J.** **March 22, 2024**

Plaintiff Shamel Jones, a prisoner previously incarcerated at SCI-Phoenix, brings this *pro se* civil action under 42 U.S.C. § 1983 based on medical treatment he received at SCI-Phoenix. Plaintiff contends to have suffered from adverse side effects after he was injected with the Johnson & Johnson COVID-19 vaccine. He alleges Eighth Amendment violations. Defendants, a doctor and a physician assistant at SCI-Phoenix, have each moved to dismiss the Complaint for failure to state a claim. For the reasons stated below, Defendants' motions to dismiss will be granted.

## I. BACKGROUND

### A. Factual Background

The following facts, as alleged in the Complaint, are taken as true for purposes of deciding Defendants' motions to dismiss. On April 8, 2021, a nurse practitioner who has not been named in this action administered the Johnson & Johnson COVID-19 vaccine into

Plaintiff's right arm.[1] Plaintiff contends that the needle was injected too deep into his arm and "pierced a nerve . . . ."[2] Hours after receiving the vaccine, Plaintiff began experiencing side effects, including severe headaches behind his eyes, back pain, a burning sensation in his right arm that traveled down to his right hand and fingers, and numbness in his right fingers.[3] Inmates at SCI-Phoenix were given informational pamphlets about the potential side effects of the vaccine, which encouraged inmates to immediately report any symptoms not enumerated in the pamphlets.[4] On April 9, 2021, Plaintiff submitted a sick call to the medical office for his side effects.[5] He did not receive a response.[6] On April 10 and April 11, 2021, Plaintiff submitted additional requests for medical attention.[7] The April 11 request described Plaintiff's pain as "so intense it's as if someone was squeezing Plaintiff's Head threw [sic] a small key hole . . . ."[8]

On April 12, 2021, Plaintiff filed an administrative grievance (Form DC-804) with the Pennsylvania Department of Corrections ("DOC") alleging, *inter alia*, deliberate indifference by the DOC's medical practitioners in violation of the Eighth Amendment.[9] The grievance form described the three sick calls Plaintiff had filed and the symptoms he was experiencing. Plaintiff contends that the DOC's medical personnel must have been aware of his medical requests because he had been placing them inside of his cell door and a nurse, Gonzales Peay

---

[1] Compl. ¶¶ 26, 43 [Doc. No. 1]; Def. Kaminsky's Mot. Dismiss, Ex. B, at 1 [Doc. No. 38-2].

[2] *Id.* ¶ 43.

[3] *Id.* ¶¶ 15, 42.

[4] *Id.* ¶ 30.

[5] *Id.* ¶ 15.

[6] *Id.* ¶ 16.

[7] *Id.* ¶¶ 17, 18.

[8] *Id.* ¶ 18.

[9] *Id.* ¶ 20; Def. Kaminsky's Mot. Dismiss, Ex. B, at 3 [Doc. No. 38-2] (Form DC-804).

("Nurse Peay"),[10] regularly stopped by Plaintiff's cell to administer his cholesterol and mental health medications.[11] Around that time, according to the Complaint, SCI-Phoenix halted administration of the Johnson and Johnson vaccine due to "multiple deaths."[12]

Later on April 12, 2021, after he filed the grievance form, Plaintiff was assessed by Defendant Dr. DeSantis.[13] Dr. DeSantis's assessment noted Plaintiff's complaints of "numbness since taking the J&J vaccine," and found that Plaintiff had "good pulses, all digits warm, good capillary refill, [and] no signs of any infection at the injection site . . . ."[14] According to Plaintiff, Dr. DeSantis orally confirmed that the nurse who administered the shot inserted the needle "too far" and "struck a nerve," thereby causing Plaintiff's side effects.[15] Dr. DeSantis placed Plaintiff on a short steroid course and determined that there was no need to follow up.[16] On April 14, 2021, Plaintiff filed another sick call due continuing numbness.[17] On April 16, 2021, he was seen by Defendant Stephen Kaminsky, a physician assistant ("PA Kaminsky").[18] Later that day, Plaintiff was evaluated by Dr. DeSantis again.[19] Plaintiff contends that Dr. DeSantis merely

---

[10] Plaintiffs' filings incorrectly spell Defendant Peay's last name as "Peasy."

[11] Compl. ¶¶ 20, 61 [Doc. No. 1].

[12] *Id.* ¶ 22.

[13] *Id.* ¶¶ 22–23; Def. Kaminsky's Mot. Dismiss, Ex. B, at 1 [Doc. No. 38-2] (SCI-Phoenix initial review response to grievance submission quoting notes from Dr. DeSantis and PA Kaminsky).

[14] Compl. ¶ 24 [Doc. No. 1]; *see also* Def. Kaminsky's Mot. Dismiss, Ex. B, at 1 [Doc. No. 38-2].

[15] Compl. ¶ 35 [Doc. No. 1].

[16] *Id.* ¶ 25; *see also* Def. Kaminsky's Mot. Dismiss, Ex. B, at 1 [Doc. No. 38-2] ("Provide Line follow-up needed: No . . . .").

[17] Compl. ¶¶ 26, 27 [Doc. No. 1].

[18] *Id.* ¶ 26; Def. Kaminsky's Mot. Dismiss at 1 [Doc. No. 38]. Plaintiffs' filings incorrectly spell Defendant Kaminsky's last name as "Keminsky."

[19] Compl. ¶ 28 [Doc. No. 1].

"[l]ooked at Plaintiff's right [a]rm and [s]queezed [his] fingers" before concluding that Plaintiff had good pulses and no sign of infection and again prescribing a short steroid course.[20]

On April 29, 2021, Plaintiff's grievance was denied.[21] Facility Grievance Coordinator M. Savage found that Plaintiff had "no unmet needs at this time" and that "[m]edications and its dosages . . . are at the provider(s) discretion toward wellness . . . ."[22] On April 30, 2021, Plaintiff filed another sick call, again describing headaches and numbness in his right arm and fingers.[23] He further described experiencing seizures and a burning sensation in his right arm.[24] Plaintiff requested a blood test to determine what was causing these symptoms, which he contends he never received because Dr. DeSantis had determined no follow-up appointment was necessary.[25]

On May 1, 2021, Plaintiff appealed the denial of his grievance to the Facility Manager's office, which was denied.[26] On May 21, 2021, Plaintiff filed a final appeal to the Chief Grievance Office.[27] While the final appeal was pending, Plaintiff filed three additional sick calls, the first on May 29, 2021, the second on June 18, 2021, and the third on June 28, 2021.[28] He described new symptoms, including "seizures . . . late at night," "finding himself [p]assed out on the cold floor before waking up sweating profusely and [s]truggling to breathe," as well as swelling and a bruise with a "dark purplish hue" at the injection site.[29] Plaintiff contends that he

---

[20] *Id.* ¶¶ 28, 29.

[21] *Id.* ¶ 31; Def. Kaminsky's Mot. Dismiss, Ex. B, at 1–2 [Doc. No. 38-2] (initial review response to Plaintiff's grievance submission).

[22] *Id.*

[23] Compl. ¶ 34 [Doc. No. 1].

[24] *Id.*

[25] *Id.*

[26] *Id.* ¶ 37.

[27] *Id.* ¶ 47.

[28] *Id.* ¶¶ 48–49, 58.

[29] *Id.* ¶ 48.

personally handed one of his sick calls to Nurse Peay, who told him to stop filing sick calls because the medical department was aware of Plaintiff's medical issues but there was nothing the department could do.[30] However, the Complaint notes that around this time, Plaintiff was prescribed Tylenol for his symptoms—"a medication that could not be bought [at the] commissary but had to be proscribed [sic] and ordered by a doctor . . . ."[31]

On July 9, 2021, the DOC Secretary's Office of Inmate Grievances and Appeals ("SOIGA") notified Plaintiff that it was "solicit[ing] input from an appropriate Central Office Bureau" regarding the issues raised in his appeal, therefore a final determination would be delayed.[32] On November 23, 2021, SOIGA issued a Final Appeal Decision affirming the denial of Plaintiff's grievance.[33] The decision stated that the DOC's Bureau of Health Care Services had "thoroughly reviewed [Plaintiff's] medical record[,] . . . determined that the medical care provided was reasonable and appropriate[,] . . . [and] found no evidence of wrongdoing."[34] The decision reiterated that Plaintiff's "attending practitioner makes these clinical decisions" and denied relief based on the Bureau of Health Care's findings.

**B. Procedural Background**

On June 15, 2022, by which time Plaintiff had been transferred to SCI-Greene, he filed this § 1983 action against Dr. DeSantis, PA Kaminsky, Nurse Peay and other "employees of the DOC," raising Eighth Amendment claims.[35] Nurse Peay moved to dismiss the Complaint for

---

[30] *Id.* ¶ 61.

[31] *Id.* ¶ 50.

[32] Def. Kaminsky's Mot. Dismiss, Ex. B, at 4 [Doc. No. 38-2] (notice regarding delayed determination).

[33] *Id.* at 6 (final appeal decision).

[34] *Id.*

[35] Compl. [Doc. No. 1].

failure to state a claim; Plaintiff then voluntarily withdrew Peay as a defendant.[36] On March 27, 2023, Plaintiff moved for summary judgment.[37] Defendants Kaminsky and DeSantis thereafter filed separate motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[38] The Court now considers Defendants' motions to dismiss.[39]

## II. Standard of Review

Plaintiff has already been granted leave to proceed *in forma pauperis*.[40] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Defendants have also moved to dismiss the Complaint pursuant to Rule 12(b)(6). Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Rule 12(b)(6),[41] which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[42] "At this early stage of the litigation, [the Court] accept[s] the facts alleged in [Plaintiff's] *pro se* complaint as true, draw[s] all reasonable inferences in [his] favor, and ask[s] only whether that complaint, liberally construed, contains

[36] Def. Peay's Mot. Dismiss [Doc. No. 17]; Pl.'s Mot. Withdraw [Doc. No. 18]; Order, Feb. 9. 2023 [Doc. No. 19].

[37] Pl.'s Mot. Summ. J. [Doc. No. 26].

[38] Def. Kaminsky's Mot. Dismiss [Doc. No. 38]; Def. DeSantis's Mot. Dismiss [Doc. No. 52].

[39] Plaintiff's motion for summary judgment will be denied as premature by separate Order, given that no discovery has been conducted in this case.

[40] Order, Nov. 23, 2022 [Doc. No. 8].

[41] *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

[42] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).

facts sufficient to state a plausible . . . claim."[43] Conclusory allegations do not suffice.[44] As Plaintiff is proceeding *pro se*, the Court construes his allegations liberally.[45]

**III. DISCUSSION**

Plaintiff brings this lawsuit pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[46] In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, therefore a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.[47] Plaintiff alleges that Dr. DeSantis and PA Kaminsky were deliberately indifferent to Plaintiff's serious medical needs, in violation of the Eighth Amendment's protection against cruel and unusual punishment. Specifically, he contends that Defendants failed to provide adequate treatment for the side effects Plaintiff experienced after receiving the Johnson and Johnson vaccine.

"To succeed on an Eighth Amendment medical needs claim, a plaintiff must make (1) a subjective showing that the defendants were deliberately indifferent to [his] medical needs and (2) an objective showing that those needs were serious."[48] "A serious medical need is 'one that

---

[43] *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quotation marks and original modifications omitted).

[44] *Iqbal*, 556 U.S. at 678.

[45] *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)).

[46] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[47] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("'Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.'" (quoting *Iqbal*, 556 U.S. at 677)).

[48] *Beckett v. Grant,* No. 19-3717, 2022 WL 485221, at *3 (3d Cir. Feb. 17, 2022) (internal quotation marks omitted) (citing *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017)).

has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'"[49] Deliberate indifference may exist when "prison authorities deny reasonable requests for medical treatment," "knowledge of the need for medical care is accompanied by the intentional refusal to provide it," or "prison authorities prevent an inmate from receiving recommended treatment for serious medical needs."[50] Additionally, "courts have found plausible claims of deliberate indifference when a prisoner alleges that the provision of medical care was both inadequate and motivated by improper or non-medical reasons."[51]

Further, "a plaintiff must allege that the official was subjectively aware of the requisite risk."[52] It is necessary to allege that a defendant "disregard[ed] . . . an excessive risk to inmate health or safety," and that the defendant was "aware of facts from which the inference can be drawn that a substantial risk of serious harm exist[ed]."[53] However, such a claim "cannot be based solely on a prisoner's disagreement with the medical care he received."[54] Allegations of medical malpractice or mere disagreement as to the proper medical treatment are insufficient to establish a constitutional violation.[55] Moreover, "[w]here a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials

---

[49] *McFadden v. Dalmasi*, No. 17-5787, 2019 WL 6218220, at *7 (E.D. Pa. Nov. 21, 2019), *aff'd*, 837 F. App'x 135 (3d Cir. 2020) (quoting *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir. 1987) (citation omitted)).

[50] *Pearson*, 850 F.3d at 538 (citing *Monmouth Cnty. Corr. Inst.,* 834 F.2d at 347). Additionally, "[d]eliberate indifference to a prisoner's serious medical needs can give rise to such a constitutional violation; however, mere medical malpractice will not." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

[51] *Buehl v. Wexford Health Sources, Inc.*, No. 16-822, 2017 WL 914275, at *7 (W.D. Pa. Mar. 8. 2017).

[52] *Petrichko v. Kurtz*, 52 F. Supp. 2d 503, 508 (E.D. Pa. 1999) (citing *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

[53] *Petrichko*, 52 F. Supp. 2d at 508 (quoting *Farmer*, 511 U.S. at 837).

[54] *Petrichko*, 52 F. Supp. 2d at 508 (citation omitted).

[55] *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

are afforded considerable latitude in the diagnosis and treatment of prisoners."[56] As such, Courts generally defer to prison officials' professional medical judgment, which is presumed to be valid unless it is such a substantial departure from professional judgment, practice or standards as to demonstrate that the doctor did not base the decision on such a judgment.[57]

Here, Jones' insistence upon receiving a blood test to diagnose his symptoms does not place a burden on Defendants to comply with the specific request. Jones alleges only that Dr. DeSantis placed him on a "short steroid course"[58] and that his further requests for "numerous blood test[s]" were ignored.[59] Jones does not allege facts suggesting that a physician "intentionally inflict[ed] pain" or "insisted on continuing courses of treatment that the doctor knew were painful, ineffective, or entailed substantial risk of serious harm . . . ."[60] It is well established that disagreements over medical judgment do not amount to an Eight Amendment claim.[61] "[T]he question whether . . . additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment," and a medical decision not to order a certain diagnostic test "does not represent cruel and unusual punishment."[62] Moreover, courts in the Third Circuit have held that an "inmate's objection to the type of medication

---

[56] *Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (per curiam); *see also Ryle v. Fuh*, 820 F. App'x 121, 123 (3d Cir. 2020) ("[P]rison authorities are 'accorded considerable latitude in the diagnosis and treatment of prisoners.'" (quoting *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993)).

[57] *Soto-Muniz v. Martin*, 665 F. App'x 226, 228 (3d Cir. 2016).

[58] Compl. ¶ 25 [Doc. No. 1].

[59] *Id.* ¶ 63.

[60] *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

[61] *Id.* at 110.

[62] *Estelle*, 429 U.S. at 107; *see also White*, 897 F.2d at 110; *Oakley v. Phillips*, No. 15-1004, 2015 WL 5728734, at *7 (D. Colo. Sept. 30, 2015) (holding that defendant nurse practitioner's decision to administer a blood test rather than other tests did not constitute an Eighth Amendment violation).

provided by prison physicians" does not amount to deliberate indifference where alternative medical care was provided.[63]

Plaintiff has not alleged facts demonstrating that Defendants denied reasonable requests for the treatment of his serious medical needs.[64] Nor has Plaintiff alleged facts demonstrating that the "provision of medical care was both inadequate and motived by improper or non-medical reasons."[65] Accordingly, Plaintiff's deliberate indifference claim will be dismissed.

## IV. CONCLUSION

For the reasons stated above, the Court will grant Defendants DeSantis and Kaminsky's motions to dismiss. An order follows.

---

[63] *Crowe v. Maxa*, No. 16-175, 2019 WL 4101236, at *4 (W.D. Pa. Aug. 29, 2019); *see also, e.g.*, *Wisniewski v. Frommer*, 751 F. App'x 192, 193–96 (3d Cir. 2018) (affirming dismissal of a plaintiff's § 1983 claim where medical prison staff stopped prescribing an opioid pain medication and advised the plaintiff to purchase Motrin from the prison commissary); *Talbert v. Corr. Dental Assocs.*, No. 19-5112, 2020 WL 890212, at *6 (E.D. Pa. Feb. 21, 2020) (holding that prisoner's belief that he should have been treated with stronger pain medication than he was given amounted to a "mere disagreement as to the proper medical treatment [needed]").

[64] *Pearson*, 850 F.3d at 538 (citing *Monmouth Cnty. Corr. Inst.*, 834 F.2d at 347).

[65] *Buehl*, 2017 WL 914275 at *7.